UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| CARRIE H. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:24-cr-00188-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| GOODWORKS UNLIMITED, LLC, ) | **&** |
| ) | **ORDER** |
| Defendants. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant Goodworks' Motion to Dismiss. [R. 4.] Carrie Johnson brought this employment action alleging multiple counts stemming from her employment termination. [R. 1-1.] For the following reasons, the Defendant's Motion to Dismiss **[R. 4]** is **GRANTED IN PART AND DENIED IN PART.**

**I**

Johnson was the Executive Director of Windsor Gardens, a senior living community, in Georgetown, Kentucky.[1] [R. 1-1 at 3.] Johnson alleges that on June 11, 2023, Matt Fuqua, the CEO of Goodworks, and Leigh Mooneyhan, the Executive Director of the Bowling Green senior living facility owned by Goodworks, held a meeting with Johnson where Johnson was terminated for cause. *Id.* at 4. As grounds for her termination, Johnson states she was told that she was seen at an after-hours event at Windsor with a glass of alcohol in her hand. *Id.* However, Johnson was not provided any documentation or evidence of her misconduct. *Id.*

Johnson filed the Complaint against Goodworks in Scott County Circuit Court in June 2024. [R. 1-1 at 1.] Goodworks removed this case to this Court in July 2024. [R. 1.] Johnson

---

[1] These facts are taken from the Plaintiff's Complaint at [R. 1-1].

alleges four counts against Goodworks: (1) Wrongful Termination, (2) Intentional Infliction of Emotional Distress, (3) Conversion, and (4) Punitive Damages. [R. 1-1 at 5-7.]

## II

The Defendant's Motion to Dismiss is brought pursuant to Rule 12(b)(6), which tests the sufficiency of a plaintiff's complaint. In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).

Moreover, the facts that are pled must rise to the level of plausibility, not just possibility; "facts that are merely consistent with a defendant's liability . . . stop[ ] short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). According to the Sixth Circuit, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

## A

Before reaching the four counts in question, the Court must first address whether Goodworks was Johnson's employer. The Plaintiff argues that the assertion that Goodworks was the employer "must be accepted as true in the analysis of a Motion to Dismiss." [R. 5 at 2.] While it is true that the Court construes the Complaint in the light most favorable to the Plaintiff, the Court is not required to accept unwarranted factual inferences or legal conclusions. *DirecTV, Inc.* at 487 F.3d at 476.

The Complaint alleges that Goodworks is the "corporate owner of Windsor Gardens" and that "Windsor was then, and remains, a property owned by Defendant." [R. 1 at 3.] Outside of these statements, there is no explicit mention that Goodworks employed Johnson. The facts of this case, however, leave the Court with questions: If Goodworks was only the property owner of Windsor, as the Defendant alleged, why was the CEO of Goodworks present at Ms. Johnson's termination meeting? [R. 1-1 at 4.] And why was Goodworks coordinating Ms. Johnson's severance package? *Id.* Ultimately, the Court finds that taking the Plaintiff's assertions as true, there is enough, albeit murky at best, to plausibly show that Goodworks was Johnson's employer.

**B**

Despite accepting as true that Goodworks was Johnson's employer, she has failed to state a claim for wrongful termination. Johnson asserts wrongful termination because she received no evidence supporting her termination. [R. 1-1 at 5.] Federal courts sitting in diversity apply federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The substantive law of the forum state governs the claims asserted. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Accordingly, the Court will evaluate the instant Motion in accordance with the Federal Rules of Civil Procedure and apply Kentucky law to Plaintiff's wrongful termination claim.

Generally, the discharge of an at-will employee does not support an action for wrongful termination under Kentucky law. *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195 (Ky. 2001). In fact, an employer may ordinarily "discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire and Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983). Kentucky law has, however, established limitations on the wrongful termination cause of action available to employees—known as the public policy exception.

The public policy exception is narrow, subject to the following limitations: (1) the discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law, (2) that policy must also be "evidenced by a constitutional or statutory provision," and (3) determination of whether the public policy asserted is a well-defined and fundamental one is an issue of law" to be decided by the Court.

There are only two circumstances where a discharge will be considered contrary to public policy: (1) where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment and (2) when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment. *Id.* The public policy must also involve an employment-related nexus.

The Defendant contends that because Johnson's Complaint "is barren of any recitation of alleged violation of public policy," "it is procedurally inappropriate for [sic] Johnson to allege new claims in the form of a response to a motion to dismiss." [R. 6 at 4.] The Defendants are correct that the Complaint lacks even a passing reference to any specific constitutional or statutory provisions upon which Johnson has based her claim. It was not until the Plaintiff filed a Response to the Motion to Dismiss that statutory provisions were identified. [R. 5 at 3.]

However, simply citing a string of KRS statutes in hopes the Court will cobble together a public policy argument where there is none is not a winning strategy.  The Plaintiff has failed at every level to assert a claim for wrongful termination.  The Court cannot conceive of how Johnson's discharge falls into either category showing the termination was contrary to public policy.  And, ultimately, it is not the job of the Court to flesh out the Plaintiff's arguments for them.  Accordingly, her claim for wrongful termination will be dismissed.

### C

The Defendant argues that "Ms. Johnson's only basis for her IIED claim is that Goodworks allegedly 'intended to embarrass and humiliate Johnson by terminating her for causes without any supporting proof, and blaming the termination [on] false and stigmatizing alleged possession of alcohol at a company event.'"  [R. 4 at 9.]  However, Defendant argues, because Goodworks was not the Plaintiff's employer, they did not terminate her.  *Id.*  Moreover, the Defendants contend that terminating someone over alcohol possession is not outrageous conduct, as required for an IIED claim.  *Id.*

Under Kentucky law, an IIED claim requires a showing: (1) that the defendant's conduct was intentional or reckless; (2) that the defendant's conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) that there is a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) that plaintiff's emotional distress was severe. *Temple v. Pflugner*, 866 F. Supp. 2d 735, 744–45 (E.D. Ky. 2011), *citing Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996).  As previously stated, the employment relationship is plausibly pled at this stage, such that the Court will not dismiss this Count on that basis.  The Court will, however, dismiss the Plaintiff's IIED claim on the basis that it cannot be considered outrageous.

The Plaintiff's bare-boned Complaint and Response provides no case law supporting their argument that this conduct rises to the level of "outrageous and intolerable." *Id.* Further, "[t]he mere termination of employment and the resulting embarrassment do not rise to the level of outrageous conduct and resulting severe emotional distress necessary to support a claim for IIED." *Miracle v. Bell Cty. Emergency Med. Servs.*, 237 S.W.3d 555, 559 (Ky. Ct. App. 2007). Because nothing beyond her termination was alleged in the complaint, this charge must be dismissed.

### D

Johnson contends that Goodworks was bound to comply with KRS 337.055, requiring payment of her PTO. [R. 1-1 at 5-6.] Goodworks failure to do so has subsequently opened them up to civil penalties pursuant to KRS 337.990(3). *Id.* KRS 337.055 provides that accumulated compensation shall be paid in full by the employer to the employee upon separation of employment within 14 days. KRS 337.010(1)(d). Again, Goodworks argues that because they were not Johnson's employer, they had no obligation to pay PTO to Johnson and her conversion claim fails. [R. 4 at 10.] Because the Court needs a fuller factual record before determining the employment relationship, and given the Defendants offer no other arguments for dismissal, Johnson's claim for conversion survives.

### E

Last, Johnson argues she is entitled to punitive damages. In order to properly allege a claim for punitive damages, the plaintiff must show: (1) the likelihood of serious harm from the defendant's misconduct; (2) the degree of the defendant's awareness of that likelihood; (3) the profitability arising from the conduct; (4) the duration and concealment of the conduct; and (5) actions the defendant took to remedy the misconduct. KRS 411.186. The Defendant argues that

because "Goodworks was not Johnson's employer and did not terminate her employment . . . Johnson cannot establish that any alleged damages, including punitive damages, resulted from Goodworks misconduct." [R. 4 at 10.] Again, because the Defendant's only argument is that they were not Johnson's employer, and taking all of Johnson's allegations as true, Johnson's claim for punitive damages remains.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendant's Motion to Dismiss **[R. 4]** is **GRANTED IN PART AND DENIED IN PART**;

2. Johnson's Wrongful Termination claim is **DISMISSED**; and

3. Johnson's Intentional Infliction of Emotional Distress is **DISMISSED**.

This the 10th day February 2025.

Gregory F. Van Tatenhove
United States District Judge